**Electronically Filed
Supreme Court
SCAP-23-0000335
12-SEP-2025
10:28 AM
Dkt. 26 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

LARRY W. MCCULLOUGH; DERROL E. ESTRELLA; JUANITA F. ESTRELLA;
JOHN A. MATUSEK; SUNDAY M. MATUSEK;
ARTHUR M. AQUINO; MILAGROS N. AQUINO;
NEVILLE T. PRITCHARD; and BARBARA M. PRITCHARD,
Plaintiffs-Appellants,

vs.

BANK OF AMERICA, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.; DAMION C. CLARK; GENTRY L. CLARK; QUICKEN LOANS, INC.;
JAMES SOR; AMERICAN SAVINGS BANK, F.S.B.; BRADLEY ALAN LOEFFLER
AND BARBARA JEAN LOEFFLER, INDIVIDUALLY AND AS TRUSTEES OF THE
LOEFFLER 2011 FAMILY TRUST DATED DECEMBER 22, 2011,
Defendants-Appellees,

and

ERIC TUCKER; MICHELLE TUCKER;
and U.S. BANK NATIONAL ASSOCIATION,
Defendants-Appellees.

SCAP-23-0000335

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CAAP-23-0000335; CASE NO. 3CC19100105K)

SEPTEMBER 12, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY DEVENS, J.

## I.  INTRODUCTION

This case arises from a wrongful foreclosure action filed against Bank of America, N.A. (Lender) after Lender foreclosed on multiple Hawaiʻi Island properties pursuant to the power of sale clauses in Lender's mortgage agreements as authorized by Hawaiʻi Revised Statutes (HRS) § 667-5 (Supp. 2008) (repealed 2012).

Plaintiffs, Arthur and Milagros Aquino, Derrol and Juanita Estrella, Neville and Barbara Pritchard, and John and Sunday Matusek (collectively, Borrowers), executed mortgage agreements with Lender, which gave Lender a lien on their respective properties.  Between 2008 to 2009, Borrowers defaulted on their mortgage loans.  Lender foreclosed on the properties.  These properties were subsequently sold to third-party purchasers.

In 2019, Borrowers brought the instant action in the Circuit Court of the Third Circuit (circuit court) alleging wrongful foreclosure; unfair or deceptive acts and practices and unfair methods of competition under HRS Chapter 480 (UDAP); and quiet title and ejectment against the current titleholders of the properties (collectively, Titleholders).  Borrowers sought compensatory and punitive damages and the return of title and possession of the properties.

The circuit court granted summary judgment in favor of

2

Lender concluding that Borrowers could not establish compensatory damages against Lender after accounting for the outstanding debt on the properties.[1]  The circuit court therefore concluded that Borrowers' wrongful foreclosure and UDAP claims failed as a matter of law.  The circuit court calculated Borrowers' compensatory damages as inclusive of loss of use of the properties, personal funds used to acquire the properties, payments in property taxes and to homeowners' associations, and payments on Borrowers' loans with Lender.  The court did not include any incurred debt or unpaid interest.

The circuit court also granted summary judgment in favor of Titleholders concluding that Borrowers could not seek the remedy of return of title and possession of the properties without first establishing damages; the quiet title and ejectment claims were barred by the statute of limitations; and Titleholders were bona fide purchasers.

We affirm the circuit court's granting of summary judgment consistent with this opinion.  Pursuant to our holdings in Lima v. Deutsche Bank National Trust Co., 149 Hawaiʻi 457, 494 P.3d 1190 (2021) and Llanes v. Bank of America, N.A., 154 Hawaiʻi 423, 555 P.3d 110 (2024), to survive summary judgment on their

---

[1]    The Honorable Robert D.S. Kim presided.

wrongful foreclosure and UDAP claims against Lender, Borrowers must establish compensatory damages after accounting for their mortgage debts at the time of the foreclosures. Viewed in the light most favorable to Borrowers and accounting for the loss of use as asserted by Borrowers in their declarations submitted to the circuit court, the court correctly determined that Borrowers did not establish compensatory damages.

In filing quiet title and ejectment claims against Titleholders, Borrowers also seek the classic remedy of a wrongful foreclosure action, which is return of title and possession of the properties. We hold that these claims against Titleholders are subject to the statute of limitations for a wrongful foreclosure action, which we conclude is six years. Consequently, Borrowers' claims against Titleholders for return of title and possession of the properties, which they first brought in 2019, are time-barred. Even if Borrowers had timely brought their claims for return of title and possession of the properties, the affidavits of foreclosure in question, which were filed in the chain of title of the properties, did not place Titleholders on constructive notice of any defects in the foreclosure process. Therefore, the circuit court correctly determined that Titleholders were bona fide purchasers.

## II.   BACKGROUND

The following is largely undisputed on appeal.  Borrowers do not contest that they missed mortgage payments, after which Lender commenced nonjudicial foreclosure proceedings.  The properties were subsequently sold to third-party purchasers.

### A.   The Aquino Property

In June 2006, Arthur and Milagros Aquino (Aquinos) obtained a $231,200.00 mortgage loan and a $43,350.00 Mortgage, Security Agreement, and Financing Statement from Lender.  The Aquinos subsequently purchased a property in Keaʻau, Hawaiʻi for $289,000.00 plus $11,550.00 in closing costs financing the purchase with the initial $231,200.00 mortgage loan; the subsequent $43,350.00 loan; and $26,000.00 in personal funds.  After purchasing the property, the Aquinos contend they paid $25,900.00 in interest on the first loan; $2,000.00 in interest on the second loan; and $5,000.00 in property taxes and insurance.

Beginning in April 2008, the Aquinos began missing payments on their loans.  In November 2008, Lender initiated a nonjudicial foreclosure against the Aquinos' property pursuant to the power of sale clause in their mortgage agreement.  After postponing the foreclosure sale, Lender held the sale on July 17, 2009; Lender was the winning bidder paying $258,546.06.

5

Lender recorded an Affidavit of Foreclosure Under Power of Sale in the Bureau of Conveyances (BOC). After the foreclosure sale, the Aquinos contend they incurred $21,000.00 in damages based on their loss of use of the property.

At the time of the sale, Lender presented evidence that the Aquinos owed $252,822.38 on the first loan and $42,490.98 on the second loan, totaling $295,313.36. There is nothing in the record indicating that Lender sought a deficiency payment on either loan.

After the sale, Lender conveyed the property to Federal National Mortgage Association (Fannie Mae). Thereafter, Fannie Mae conveyed the property to subsequent purchasers.

B.   **The Estrella Property**

In March 2008, Derrol and Juanita Estrella (Estrellas) obtained a $525,000.00 mortgage loan from Lender. The Estrellas purchased a property in Kailua-Kona, Hawaiʻi, for $750,000.00 plus $9,000.00 in closing costs financing the purchase with $525,000.00 from the mortgage loan and $234,000.00 in personal funds. Thereafter, the Estrellas contend they paid $44,000.00 in interest on the loan; $3,500.00 in escrow to cover property taxes; and $2,400.00 in payments to their homeowner's association.

Beginning in February 2009, the Estrellas began missing

payments on their loan.  Lender initiated a nonjudicial foreclosure pursuant to the mortgage agreement's power of sale clause.  After postponing the foreclosure sale, Lender held the sale on June 8, 2010; Lender was the winning bidder paying $578,550.95.  Lender subsequently recorded an Affidavit of Foreclosure Sale Under Power of Sale in the BOC.  After the foreclosure sale, the Estrellas contend they incurred damages based on loss of use totaling $35,000.00.

Lender presented evidence that at the time of the sale, the Estrellas owed $573,935.80 on the loan.  After the sale, Lender conveyed the property to Fannie Mae.  In 2011, Fannie Mae conveyed the property to subsequent purchasers.  Those purchasers later conveyed the property to the current titleholder.  The property is subject to a mortgage lien in favor of Mortgage Electronic Registrations Systems, Inc. (MERS) as nominee for American Savings Bank, F.S.B.

C.  **The Pritchard Property**

In October 2006, Neville and Barbara Pritchard (Pritchards) obtained a $1,932,000.00 construction mortgage loan from Lender to construct improvements on their property in Kailua-Kona, Hawaiʻi.  The Pritchards purchased the property in 2001 for $375,000.00 using $100,000.00 in personal funds and $275,000.00 from a separate purchase mortgage loan.  The Pritchards assert

7

they paid "over" $22,000.00 in closing costs and $3,000.00 in escrow and title insurance charges to secure the loan. Thereafter, the Pritchards contend they paid $180,000.00 in interest on Lender's construction loan and $9,000.00 in property taxes.

In December 2007, the Pritchards executed a second mortgage loan granting a separate lender a security interest in the property. In August 2008, the Pritchards executed a loan modification with Lender.

Beginning in October 2008, the Pritchards began missing loan payments. Lender initiated a nonjudicial foreclosure pursuant to the mortgage agreement's power of sale clause. After postponing the foreclosure sale, Lender held the sale on June 2, 2010; Lender was the winning bidder paying $1,440,000.00. Lender subsequently recorded an Affidavit of Foreclosure Sale Under Power of Sale in the BOC. Lender presented evidence that at the time of the sale, the Pritchards owed $2,136,799.31 in outstanding debt. There is nothing in the record indicating that Lender sought a deficiency payment on the loan. After the foreclosure sale, the Pritchards assert that they incurred damages including $16,000.00 in lost fixtures; $16,000.00 in storage costs; $26,000.00 in moving costs; and $28,000.00 in loss of use of the property.

In 2011, the current titleholders purchased the property from Lender for $1,199,000.00.  The current titleholders entered into a mortgage agreement with MERS, as nominee for Hawaiian Tel Federal Credit Union, to secure a loan, which was subsequently reassigned to U.S. Bank.

**D.   The Matusek Property**

In June 2008, John and Sunday Matusek (Matuseks) obtained a $524,000.00 mortgage loan from Lender to refinance an existing loan encumbering a property in Kamuela, Hawaiʻi.  The Matuseks used $519,012.00 in proceeds from their 2008 loan from Lender to pay off the existing loan.  According to the Matuseks, they originally purchased the property for $586,988.00, plus $22,000.00 in closing costs, using $469,550.00 from the prior loan and $140,450.00 in personal funds.  Excluding loan proceeds, the Matuseks contend their out-of-pocket costs also included $51,000.00 in interest paid on the 2005 loan; $13,500.00 in property taxes; $29,000.00 in homeowner dues; $2,493.42 in closing costs on the 2008 loan; and $4,250.00 in interest paid on the 2008 loan.

Beginning in September 2008, the Matuseks began missing payments on their loan with Lender.  Lender initiated a nonjudicial foreclosure pursuant to the mortgage agreement's power of sale clause.  After postponing the foreclosure sale,

9

Lender held the sale on September 11, 2009; Lender was the winning bidder paying $436,545.00. Lender subsequently recorded an Affidavit of Foreclosure Under Power of Sale in the BOC. After the sale, the Matuseks asserted they incurred $22,500.00 in damages based on the loss of use of the property.

Lender presented evidence that at the time of the sale, the Matuseks owed $560,697.18 on the loan. There is no indication in the record that Lender sought a deficiency payment.

After the sale, Lender conveyed the property to the Federal Home Loan Mortgage Corporation (Freddie Mac). Freddie Mac subsequently conveyed the property to purchasers who later conveyed the property to the current titleholders.

**E.    Circuit Court Proceedings**

In 2019, Borrowers filed the instant action in the circuit court against Lender and Titleholders alleging claims for wrongful foreclosure, UDAP, and quiet title and ejectment. Lender moved for summary judgment arguing, among other things, that Borrowers did not establish prima facie wrongful foreclosure or UDAP claims because their outstanding debt owed on the mortgages at the time of the foreclosure sales exceeded their compensatory damages. Borrowers countered that they established compensatory damages against Lender based on the "sale" price of the properties including their incurred mortgage

10

debt plus the loss of use of the properties.

Titleholders also moved for summary judgment as to Borrowers' quiet title and ejectment claims arguing that Borrowers' claims for quiet title and ejectment failed as a matter of law because they lacked compensatory damages; the claims were barred by the statute of limitations; and Titleholders were bona fide purchasers.  Borrowers filed cross-motions for summary judgment against Titleholders asserting that any conveyances of the properties after the foreclosure sales were void and Titleholders were not bona fide purchasers.

The circuit court granted the motions for summary judgment filed by Lender and Titleholders and accordingly denied the cross-motions filed by Borrowers.

Relying on our decision in Lima, the circuit court ruled that Borrowers had failed to establish compensatory damages as a required element for their wrongful foreclosure and UDAP claims and, thus, their claims against Lender failed as a matter of law.  The circuit court rejected Borrowers' theory that loan proceeds could be included in calculating their damages.  The circuit court determined that Borrowers were not entitled to damages based on loss of use of the properties; nevertheless, the circuit court considered Borrowers' alleged damages based on loss of use in its calculations and still determined that

11

Borrowers' outstanding mortgage debt at the time of the foreclosures exceeded their claims for compensatory damages.

The circuit court also granted Titleholders' motions for summary judgment determining that conveyances of the properties after the foreclosure sales were not void and that Titleholders were bona fide purchasers. The circuit court further ruled that Borrowers' claims against Titleholders were barred by the six-year statute of limitations for wrongful foreclosure and that given Borrowers' failure to establish damages against Lender, they could not elect the remedy of return of title and possession of the properties.

The circuit court issued its final judgment in favor of Lender and Titleholders and against Borrowers, which Borrowers appealed to the Intermediate Court of Appeals. We granted transfer to this court.

### III.  STANDARD OF REVIEW

"Summary judgments are reviewed de novo and are only appropriate where no genuine issue of material fact is established by admissible evidence, when the evidence and inferences drawn therefrom are viewed in the light most favoring the party opposing summary judgment." Llanes, 154 Hawaiʻi at 428, 555 P.3d at 115 (citation omitted). "We may affirm summary judgments on any grounds in the record, including those upon

which the circuit court did not rely."  Id. at 429, 555 P.3d at 116 (citation omitted).

## IV.  DISCUSSION

### A.  Borrowers have not established compensatory damages under Lima and Llanes.

Prior to its repeal in 2012, HRS § 667-5 authorized the nonjudicial foreclosure of a mortgaged property when "a power of sale is contained in a mortgage[.]"  HRS § 667-5(a).  Borrowers brought their claims for wrongful foreclosure and UDAP against Lender asserting procedural deficiencies in the foreclosure process.  Our decisions in Lima and Llanes, which were decided after Borrowers filed the instant action, addressed similar claims and are dispositive.  See Lima, 149 Hawaiʻi at 467-69, 494 P.3d at 1200-02; Llanes, 154 Hawaiʻi at 429-34, 555 P.3d at 116-21.

In order to establish their wrongful foreclosure claims against Lender, Borrowers "must establish '(1) a legal duty owed to the mortgagor by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury sustained; and (4) damages.'"  Lima, 149 Hawaiʻi at 464, 494 P.3d at 1197 (quoting Bank of America, N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 264 n.12, 428 P.3d 761, 776 n.12 (2018) overruled on other grounds by Wilmington Sav. Fund Soc'y,

13

FSB v. Domingo, 155 Hawai'i 1, 556 P.3d 347 (2024)).  With respect to Borrowers' UDAP claims, they must establish "'(1) either that the defendant violated the UDAP statute (or that its actions are deemed to violate the UDAP statute by another statute), (2) that the consumer was injured as a result of the violation, and (3) the amount of damages sustained as a result of the UDAP violation.'"  Id. at 464-65, 494 P.3d at 1197-98 (quoting Kawakami v. Kahala Hotel Invs., LLC, 142 Hawai'i 507, 519, 421 P.3d 1277, 1289 (2018)).

In Lima, we established that plaintiff-borrowers pursuing wrongful foreclosure and UDAP claims "must make a prima facie case that their requested damages will restore them to their pre-tort position to survive summary judgment" and "cannot rely on nominal damages to withstand a motion for summary judgment." 149 Hawai'i at 465, 466, 494 P.3d at 1198, 1199.  We reasoned that "compensatory damages are intended to restore a plaintiff to the position they would have been in prior to the alleged tortious act."  Id. at 466, 494 P.3d at 1199 (citation omitted). Thus, Borrowers "must account for their remaining mortgage debts when they establish their damages."  Id. at 469, 494 P.3d at 1202.

Llanes held that "outstanding debt may not be counted as damages in wrongful foreclosure cases."  154 Hawai'i at 434, 555

14

P.3d at 121. Llanes also held that borrowers were entitled to loss of use in calculating their compensatory damages, but reaffirmed that any damages, including calculations based on loss of use of a property, must be offset by a borrower's mortgage debt. Id. at 433, 555 P.3d at 120.

Applying our case precedent to the instant case, even accounting for damages based on loss of use of the properties as alleged in Borrowers' declarations filed in the circuit court, Borrowers' debts at the time of the foreclosure sales exceeded their compensatory damages. Consequently, Borrowers have not established prima facie wrongful foreclosure or UDAP claims against Lender.

To the extent the circuit court concluded that Borrowers could not seek loss of use as special damages, this conclusion was incorrect in light of our decision in Llanes. See Llanes, 154 Hawaiʻi at 433, 555 P.3d at 120. However, irrespective of its conclusion, the circuit court nonetheless calculated the Borrowers' damages as inclusive of loss of use and determined that even accounting for the loss of use of the properties, Borrowers failed to establish compensatory damages.

Calculating Borrowers' damages in a light most favorable to them based on their declarations, including damages for the loss of use of the properties, interest payments on Borrowers'

respective loans, property tax payments, dues paid to homeowner associations, and personal funds used to purchase the properties, there is no genuine issue of material fact that Borrowers' outstanding debts owed at the time of the foreclosure sales exceed their alleged compensatory damages.

**B.   Borrowers' claims for quiet title and ejectment fail.**

**1.   Claims against Titleholders are barred by the statute of limitations.**

Titleholders assert that Borrowers cannot seek the remedy of return of title and possession because Borrowers did not establish damages against Lender.[2]  Further, even if these claims were viable, Titleholders contend that Borrowers' claims for return of title and possession are subject to the six-year statute of limitations in HRS § 657-1(4) (2016), which governs personal actions, and therefore these claims against Titleholders are time-barred.[3]

In response, Borrowers argue that even absent a showing of

---

[2]   Of the parties to this appeal, only the Estrellas, the Matuseks, and the Pritchards brought claims for quiet title and ejectment.  The Aquinos only sought monetary damages.

[3]   Borrowers' action against Lender tolled based on a federal class action filed in the United States District Court, District of Hawaiʻi, Degamo v. Bank of America, N.A., Civil No. 13-00141 JAO-KJM, which was later dismissed.  See Levi v. Univ. of Hawaii, 67 Haw. 90, 94, 679 P.2d 129, 132 (1984) (adopting the United States Supreme Court's holdings on class-action "tolling" in which the commencement of a class action tolls the statute of limitations for putative members until class certification is denied).  Titleholders were not defendants to Borrowers' federal action.  Under the circumstances of this case, class-action tolling does not apply to claims against Titleholders.

16

damages against Lender, they may seek the "classic remedy" of return of title and possession for the wrongful foreclosures. Borrowers additionally argue that their claims against Titleholders are not time-barred because HRS § 657-1(4) does not apply to their quiet title and ejectment claims, which they contend are subject solely to the limitation provided in HRS § 657-31 (2016).[4]

We disagree with the circuit court that Borrowers must establish compensatory damages against Lender in order to seek return of title and possession of the foreclosed-on properties. However, we agree that in filing their quiet title and ejectment claims, Borrowers essentially seek a remedy for the wrongful foreclosures. We therefore hold that the statute of limitations for Borrowers' wrongful foreclosure claims also applies to their quiet title and ejectment claims against Titleholders.

"Hawaiʻi's wrongful foreclosure law provides compensatory damages for proven out-of-pocket losses, taking debt into account, and, where a subject property has not been sold to a subsequent purchaser, 'the classic remedy for such a cause of action: return of title and possession.'" Llanes, 154 Hawaiʻi at

---

[4] HRS § 657-31 provides that "[n]o person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued."

17

434, 555 P.3d at 121 (emphasis added) (quoting Santiago v.

Tanaka, 137 Hawai'i 137, 154 n.33, 366 P.3d 612, 629 n.33

(2016)).

In Santiago v. Tanaka, we explained that "money damages . .

. may be substituted for title and possession in certain

instances pursuant to the equitable powers of a court in

adjudicating a case arising from a mortgage foreclosure[.]"  137

Hawai'i at 154 n.33, 366 P.3d at 629 n.33.  In subsequent cases,

we referred to the "Santiago rule" explaining that if a

wrongfully foreclosed property has been sold to an innocent

purchaser for value, monetary damages are the appropriate

remedy.  Mount v. Apao, 139 Hawai'i 167, 180, 384 P.3d 1268, 1281

(2016); see also Llanes, 154 Hawai'i at 434, 555 P.3d at 121;

Delapinia v. Nationstar Mortgage LLC, 150 Hawai'i 91, 102, 497

P.3d 106, 117 (2021).

In filing their quiet title and ejectment claims against

Titleholders, Borrowers are seeking the "classic remedy" for the

alleged wrongful foreclosures.  See, e.g., Santiago, 137 Hawai'i

at 154 n.33, 366 P.3d at 629 n.33; Mount, 139 Hawai'i at 180, 384

P.3d at 1281; Llanes, 154 Hawai'i at 434, 555 P.3d at 121.  It

thus follows that as a remedy for the wrongful foreclosure,

Borrowers' claims for return of title and possession of the

properties are subject to the same statute of limitations as

18

their wrongful foreclosure claims.  We therefore address the applicable statute of limitations for a wrongful foreclosure claim to determine whether Borrowers' claims against Titleholders are time-barred.

"A foreclosure action is a legal proceeding to gain title or force a sale of the property for satisfaction of a note that is in default and secured by a lien on the subject property." Bank of America, N.A. v. Reyes-Toledo, 139 Hawai'i 361, 368, 390 P.3d 1248, 1255 (2017).  As we recently held in Bank of New York Mellon v. White, a foreclosure action is an equitable action involving a conveyance of a real property interest, therefore, "the statute of limitations for mortgage foreclosure actions is twenty years per HRS § 657-31."  156 Hawai'i 246, 248-50, 573 P.3d 629, 631-33 (2025).

In contrast, a wrongful foreclosure action is based in tort.  Lima, 149 Hawai'i at 465, 494 P.3d at 1198.  As discussed supra, in filing claims for quiet title and ejectment, Borrowers seek the "classic remedy" of return of title and possession based on the alleged wrongful foreclosures.  See Llanes, 154 Hawai'i at 434, 555 P.3d at 121.  Therefore, even if a borrower seeks recovery of title and possession of a property as a remedy to a wrongful foreclosure, the claim sounds in tort.

Pursuant to HRS § 657-1(4), there is a six-year statute of

limitations for "[p]ersonal actions of any nature whatsoever not specifically covered by the laws of the State."  HRS § 657-1(4).  In the ICA's opinion in Delapinia v. Nationstar Mortgage LLC (Delapinia I), the ICA concluded that the six-year statute of limitations under HRS § 657-1(4) applied to plaintiffs' wrongful foreclosure claim.  146 Hawaiʻi 218, 225, 458 P.3d 929, 936 (App. 2020), aff'd in part, vacated in part, 150 Hawaiʻi 91, 497 P.3d 106.  In Delapinia v. Nationstar Mortgage LLC (Delapinia II), we affirmed the ICA's decision in part, but did not expressly reach the issue of the statute of limitations for the wrongful foreclosure claim.  150 Hawaiʻi at 96 n.8, 497 P.3d at 111 n.8.

We now address the appropriate statute of limitations for a wrongful foreclosure claim and hold that HRS § 657-1(4) applies.  See Delapinia I, 146 Hawaiʻi at 225, 458 P.3d at 936.  We find the ICA's reasoning in Delapinia I persuasive.  As in Delapinia I, Borrowers in this case contend that Lender wrongfully deprived them of their ownership interest in their respective properties.  See id.  "In other words, [plaintiffs] alleged that the foreclosure caused non-physical injury to their intangible interests."  Id.  Thus, HRS § 657-1(4), which applies to "claims concerning a non-physical injury to an intangible interest of the plaintiff," applies to wrongful foreclosure claims.  Id.

20

(citation and emphasis omitted)

In this case, the applicable foreclosure sales took place between 2009 and 2010.  Borrowers filed the instant action in 2019, approximately nine years later.  Accordingly, when Borrowers filed their complaint against Titleholders, their claims were barred by the applicable six-year statute of limitations.  HRS § 657-1(4).

**2.   Titleholders are bona fide purchasers.**

We further hold that under these facts and circumstances Titleholders are protected bona fide purchasers.

To begin, we respectfully disagree with Borrowers' argument that any wrongful foreclosure renders a subsequent sale automatically void as opposed to it being potentially voidable.  As stated in Delapinia II, our cases

> make clear that if a foreclosure violates a statute governing the nonjudicial foreclosure scheme, or other law extrinsic to the mortgage itself, the sale is "voidable at the election of the mortgagor," and in turn, "where the property has passed into the hands of an innocent purchaser for value, . . . an action at law for damages is generally the appropriate remedy."

150 Hawaiʻi at 101-02, 497 P.3d at 116-17 (emphasis original) (quoting Mount, 139 Hawaiʻi at 180, 384 P.3d at 1281).  Contrary to Borrowers' arguments, Delapinia II, which was based on our case precedent, did not constitute a new rule, and its holding applies to this case.  See id. at 104, 497 P.3d at 119.

The question before us is whether Borrowers have

21

established that the conveyances to Titleholders after the foreclosure sales are voidable.  As stated, pursuant to Delapinia II, when a property has passed into the hands of an innocent purchaser for value, making the voiding of a foreclosure sale unfeasible, damages are generally the appropriate remedy.  Id. at 101, 497 P.3d at 116.  "[I]f the purchasers were innocent purchasers for value" then the Borrowers would have "failed to establish that their title is superior" to the defendant currently holding title, which is "required for a quiet title claim to succeed[.]"  Id. at 100, 497 P.3d at 115 (quotations and brackets omitted).  These "innocent purchasers," also referred to as bona fide purchasers, would therefore "enjoy superior title," and any quiet title and ejectment claim would fail.  Id.

Borrowers allege procedural defects during the respective foreclosure sales.  Borrowers do not assert that they did not have adequate notice of the foreclosure sales, but rather that the notices of sale published in The Honolulu Advertiser and posted on the properties were not in compliance with HRS §§ 667-5 and 667-7.  According to Borrowers, these purported procedural defects were plain on the face of the affidavits of foreclosure, which Lender recorded in the chain of title of each property,

and thus Titleholders are not protected bona fide purchasers.

"A bona fide purchaser" is "one who acquires an interest in a property for valuable consideration, in good faith, and without notice of another party's adverse interests in the property[.]" Delapinia II, 150 Hawai'i at 100, 497 P.3d at 115 (quoting 92A C.J.S. Vendor and Purchaser § 528 (2021)); see also Kau Agribusiness Co. v. Heirs or Assigns of Ahulau, 105 Hawai'i 182, 193-94, 95 P.3d 613, 624-25 (2004). By contrast, a "non-bona fide purchaser is one who does not pay adequate consideration, 'takes with knowledge that his transferor acquired title by fraud[,] or . . . buys registered land with full notice of the fact that it is in litigation between the transferor and a third party.'" Kondaur Cap. Corp. v. Matsuyoshi, 136 Hawai'i 227, 240 n.27, 361 P.3d 454, 467 n.27 (2015) (brackets in original) (quoting Akagi v. Oshita, 33 Haw. 343, 347 (Haw. Terr. 1935)).

Borrowers do not contest that Titleholders paid value for the properties, but rather argue that Titleholders were on "constructive notice" of defects in the foreclosure process based on the affidavits of foreclosure filed in each property's chain of title.

"Constructive notice arises as a legal inference . . . where circumstances are such that a reasonably prudent person

23

should make inquiries, and therefore the law charges a person with notice of facts which inquiry would have disclosed." SGM P'ship v. Nelson, 5 Haw. App. 526, 529, 705 P.2d 49, 52 (App. 1985) (cleaned up); see Black's Law Dictionary, at 1274 (12th ed. 2024).

We hold that as a matter of law the individual affidavits in this case did not place Titleholders on constructive notice, or inquiry notice, of procedurally defective foreclosure sales. See SGM P'ship, 5 Haw. App. at 529, 705 P.2d at 52. The affidavits were signed and filed by Lender's counsel in the BOC. Each affidavit attested that the foreclosures occurred in compliance with and pursuant to HRS §§ 667-5 through 667-10. The affidavits further provided that notices of the sales were published in The Honolulu Advertiser and the sales were postponed by public announcement.

There was nothing on the face of these affidavits that provided Titleholders with constructive notice that the foreclosures were procedurally defective. Given the outcome of this decision, we need not reach whether the notices of sale, descriptions, and postponements complied with HRS § 667-5 and our applicable caselaw, including Hungate v. Law Office of David B. Rosen. See 139 Hawaiʻi 394, 403-04, 391 P.3d 1, 10-11 (2017), abrogated on other grounds by State ex rel. Shikada v. Bristol-

24

Myers Squibb Co., 152 Hawaiʻi 418, 526 P.3d 395 (2023).

We respectfully disagree with Borrowers' constructive notice theory that third-party purchasers should be held to the same standard as a court reviewing a foreclosure action. Borrowers' theory imposes unreasonable expectations on third-party purchasers that does not comport with the policy of protecting the interests of innocent purchasers and avoiding forfeiture of those interests. See Delapinia II, 150 Hawaiʻi at 104, 497 P.3d at 119; see also Keawe v. Parker, 6 Haw. 489, 496 (Haw. Kingdom 1884).

Thus, the only question before us is whether the "land records," specifically each affidavit of foreclosure, and the "accessible law" at the time gave the Titleholders' notice of any alleged defects in title. See Kau Agribusiness Co., 105 Hawaiʻi at 193, 95 P.3d at 624. Each affidavit attested that all procedures complied with the applicable statutes.[5] In each case,

_____

[5] The foreclosure affidavits, signed by Lender's counsel, constituted sworn statements attesting that the foreclosures occurred in compliance with HRS Chapter 667. See HRS § 667-5 (repealed). HRS § 667-17 was enacted in 2012 after the foreclosure sales at issue. The statute requires that attorneys filing on behalf of a mortgagee seeking to foreclose on a residential property "sign and submit an affirmation that the attorney has verified the accuracy of the documents submitted, under penalty of perjury and subject to applicable rules of professional conduct." HRS § 667-17 (2016 & Supp. 2017). In James B. Nutter & Co. v. Namahoe, in addressing a Hawaiʻi Rules of Civil Procedure Rule 60(b)(6) motion alleging fraud on the court, this court noted that "an inaccurate, incomplete, or otherwise misleading HRS § 667-17 affirmation may constitute a misrepresentation to the court." 153 Hawaiʻi 149, 168, 528 P.3d 222, 241 (2023). Accordingly, while not at issue

the actual foreclosure sales took place after the publication of the notices of sale and after the notices of sales were posted on the properties.  On these undisputed facts and circumstances, Titleholders are bona fide purchasers.

## V.    CONCLUSION

The circuit court's grant of summary judgment is affirmed.

James J. Bickerton,
Van-Alan H. Shima and
(Bridget G. Morgan-Bickerton
on the briefs) for
plaintiffs-appellants

Elizabeth Z. Timmermans,
(Allison Mizuo Lee and
Patricia J. McHenry on the
briefs) for defendant-appellee
Bank of America

Pamela W. Bunn
(Madisson L. Heinze on the
briefs) for defendants-appellees
Eric Tucker, Michelle Tucker
and U.S. Bank, N.A.

Charles A. Price
for defendants-appellees
James Sor, American Savings Bank,
F.S.B., and Bradley Alan Loeffler
and Barbara Jean Loeffler,
Individually and as Trustees of
the Loeffler 2011 Family Trust
Dated December 22, 2011

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens



---

in the instant case, under HRS § 667-17, an "inadequate attorney affirmation may rise to the level of fraud on the court."  Id.